IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLE HAWKINS, | ) | |
|     Plaintiff, | ) | C.A. No. 09-98 Erie |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| MARILYN BROOKS, et al., | ) | |
|     Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss [Document 40] and supplemental motion to dismiss [Document # 86] be granted in part and denied in part.

**II.    REPORT**

**A**.    **Relevant Procedural and Factual History**

On May 1, 2009, Plaintiff Nichole Hawkins, an inmate incarcerated at the State Correctional Institution at Cambridge Springs, Pennsylvania ("SCI-Cambridge Springs"), filed this civil rights action pursuant to 42 U.S.C. § 1983.  Named as Defendants in the Complaint are:  Marilyn Brooks, former Superintendent at SCI-Cambridge Springs ("Brooks"); Rhoda Winstead, Superintendent at SCI-Cambridge Springs ("Winstead"); Capt. Rogers, a corrections officer at SCI-Cambridge Springs ("Rogers"); Lt. Cerami, a corrections officer at SCI-Cambridge Springs ("Cerami"); Jeffrey Beard, Secretary at the Pennsylvania Department of Corrections ("Beard"); and Carol Dewitt, Unit Manager at SCI-Cambridge Springs ("Dewitt"). On January 12, 2010, this Court granted Plaintiff leave to supplement her Complaint to add Ms. Senz, a counselor at SCI-Cambridge Springs ("Senz"), as a Defendant in this case. [Document # 84].

Plaintiff asserts claims of retaliation, harassment, defamation of character, and mental anguish against some or all of the named Defendants.  In particular, Plaintiff alleges that

Defendant Cerami has subjected her to verbal threats and harassment, and has withheld her mail, in retaliation for her claim that she was raped by a corrections officer at SCI-Muncy. (Complaint at p. 3). In addition, Plaintiff claims that Defendant Rogers has been withholding her mail, allegedly in retaliation for her complaints about Defendant Cerami. (Id.). Plaintiff also alleges that Defendants Winstead, Brooks and Beard were each told about the alleged harassment and retaliation by Defendants Cerami and Rogers, but did nothing to rectify the situation. (Id. at pp. 3-4). With regard to Defendants Brooks and Beard, Plaintiff also claims that they failed to have her transferred out of state, apparently in violation of her due process rights. (Id. at p. 4). Plaintiff claims further that Defendant Dewitt ignored the officers' alleged harassment and retaliation, and also committed her own acts of harassment and retaliation. (Id.). Finally, Plaintiff claims that Defendant Senz is responsible for alleged acts of retaliation because she made officers aware of Plaintiff's rape allegations. (Document # 84, Supplemental Complaint, at p. 1). As relief for her claims, Plaintiff seeks monetary damages and injunctive relief in the form of an order requiring Defendants to cease all harassment and retaliation and to implement an out-of-state transfer to SCI-Jessup in Baltimore, Maryland.

      In response to the Complaint, the originally named Defendants filed a motion to dismiss [Document # 40], arguing, *inter alia*, that: (i) Plaintiff has failed to state a claim upon which relief may be granted; (ii) Plaintiff has failed to adequately allege any personal involvement against Defendants Brooks, Winstead, and Beard; and (iii) Plaintiff's claims of mental anguish and defamation are barred by the Eleventh Amendment and/or sovereign immunity. Defendant Senz subsequently filed a motion to dismiss the Supplemental Complaint [Document # 86], arguing that Plaintiff has failed to state a claim against her upon which relief may be granted. Plaintiff has filed responses to both motions to dismiss. This matter is now ripe for consideration.

**B.     Standards of Review**

    **1.     Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 95 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> \* \* \*
>
> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d. 203, 210 (3d Cir. 2009).


### 2.     *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard);

4

Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion

#### 1. Verbal Threats and Harassment

Plaintiff generally claims that Defendant Cerami "has been harassing [her] since [she] arrived here at SCI-Cambridge Springs," and that Defendant Dewitt verbally threatened her by telling her "that if any more of [her] family members called Camp Hill, [she] would suffer." (Complaint at unnumbered pp. 3-4).  Assuming these claims are true, it is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983.  See Wright v. O'Hara, 2004 WL 1793018 at *7 (E.D.Pa. Aug. 11, 2004)("[w]here plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit")(citations omitted); MacLean v. Secor, 876 F.Supp. 695, 698-99 (E.D.Pa. 1995)("[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim"); Murray v. Woodburn, 809, F.Supp. 383, 384 (E.D.Pa. 1993)("Mean harassment ... is insufficient to state a constitutional deprivation")(listing cases).  Thus, Plaintiff's claims based upon alleged verbal threats and harassment by Defendants Cerami and Dewitt should be dismissed.

#### 2. Retaliation

Plaintiff claims that Defendants Cerami and Rogers withheld her mail in retaliation for her pursuit of charges against the corrections officer at SCI-Muncy who she claims raped and impregnated her.  In addition, Plaintiff claims that Defendant Dewitt retaliated against her for complaining about the officers' harassment and retaliation by moving Plaintiff to a different unit.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials[1]; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[2]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological

---

[1] To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[2] In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

interest." Rauser, 241 F.3d at 334.  In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

### a.     Constitutionally Protected Activity

With regard to the first prong of the Rauser test, Defendants assert that "it is not clear [w]hat protected activity Plaintiff contends motivated the defendants to retaliate against her." (Document # 41, Defendants' Brief, at p. 6).  However, it appears clear to the Court that, as to Defendants Cerami and Rogers, Plaintiff is claiming she suffered retaliation for "pressing charges" against the officer at SCI-Muncy who allegedly raped her. (See Complaint at unnumbered p. 3).  With regard to Plaintiff's claim against Defendant Dewitt, it is equally clear that Plaintiff is alleging that she suffered retaliation for complaining about the harassment and retaliation she allegedly suffered at the hands of officers and staff.  Accordingly, the Court finds that Plaintiff has met the first prong of her retaliation claims against these Defendants, as "pressing charges" and/or filing civil lawsuits, as well as voicing complaints and/or filing grievances, are all constitutionally protected activities.  See, e.g., Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997)(finding that the filing of a lawsuit is protected activity); Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000)(holding that an inmate has a right under the First Amendment to file grievances against prison staff).

### b.     Adverse Action

To satisfy the second prong, Plaintiff's allegations regarding the actions of Defendants must rise to the level of adverse action; in other words, Plaintiff's allegations must be sufficient to demonstrate that the alleged actions would deter a person of ordinary firmness from engaging in the protected activity of filing a lawsuit or grievance.  While the adverse action inquiry is

ordinarily a question of fact for the jury, some alleged "adverse actions" are so *de minimis* that they fail to state a retaliation claim as a matter of law. See Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002); Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

### i. Defendants Cerami and Rogers

Plaintiff claims that Defendants Cerami and Rogers retaliated against her by withholding her mail. (Complaint at unnumbered p. 3). In response, Defendants contend that Plaintiff's "claim that Cerami and Rogers were somehow withholding her **incoming** mail has been repeatedly investigated by various individuals, including non-defendants, and found to be baseless." (Document # 41, Defendants' Brief, at p. 7)(emphasis added). In support of this contention, Defendants have submitted copies of several grievances in which Plaintiff complained that her mail was being held, along with a copy of a response from Defendant Winstead. (See Exhibit 1 attached to Document # 40, Defendants' motion to dismiss). Many of these grievance copies include responses denying that Plaintiff's mail was being held or mishandled. As a result, Defendants argue that Plaintiff cannot show that she suffered any adverse action at the hands of Defendants Cerami or Rogers. However, the grievance copies submitted by Defendants are not dispositive of the issue of whether Plaintiff can show that she was subjected to adverse action.[3]

First, the fact that prison officials and/or staff advised Plaintiff that her mail was not

---

[3]

Fed.R.Civ.P. Rule 12(b) provides that "[i]f, on a motion ...to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,..." Here, Defendants have submitted various exhibits, which this Court has reviewed and considered as part of its determination of Defendants' motion. As a result, Defendants' motion to dismiss will be treated as a motion for summary judgment and disposed of in accordance with Rule 56 of the Federal Rules of Civil Procedure. Ordinarily, the plaintiff is entitled to notice of the Court's intent to treat a motion to dismiss as a summary judgment motion. Here, however, Plaintiff has already submitted various exhibits of her own in direct response to those submitted by Defendants, which have also been reviewed and considered by the Court. Thus, Plaintiff will not be prejudiced by the treatment of Defendants' pending motion as one for summary judgment.

being held or tampered with does not negate Plaintiff's allegations that such withholding occurred. It merely creates a genuine issue of material fact that cannot be decided on summary judgment.

Second, Defendants' brief and exhibits fail to address Plaintiff's claim that her **outgoing** mail was also allegedly being withheld. In particular, Plaintiff alleges that "Capt. Rogers and Lt. Cerami are in close contact with Muncy staff, making it hard for me to get mail out of the prison to press and family members." (Complaint at unnumbered p. 3). Furthermore, in an attachment to her Complaint addressed to "Your Honor," Plaintiff claims that after investigators visited her at SCI-Cambridge Springs to discuss her rape charges, "all the problems began, with my mail not leaving the prison, to the courts and to any attorney I tried to contact." (See Complaint at p. 9). As purported evidence of this fact, Plaintiff has submitted a copy of letter she received from a law office indicating that the office had not received various documents Plaintiff claims to have mailed from SCI-Cambridge Springs. (See Exhibit 4 attached to Document # 73, Plaintiff's Response). Thus, Plaintiff is essentially claiming that the alleged withholding of her outgoing mail has interfered with her ability to obtain an attorney to investigate and handle her case. It would not be unreasonable for a jury to find that such circumstances might deter a person of ordinary firmness from engaging in the protected activity of pressing criminal charges and/or filing a lawsuit.

Accordingly, the Court finds that Plaintiff has sufficiently alleged that she suffered an adverse action at the hands of Defendant Cerami and Rogers as a result of her constitutionally protected conduct.

### ii.     Defendant Dewitt

Plaintiff claims that Defendant Dewitt retaliated against her for complaining about harassment and retaliation by officers and staff, by "having [Plaintiff] moved to a different unit, so that [Plaintiff] was no longer under her management." (Complaint at unnumbered p. 4).

However, Plaintiff fails to indicate how such a move was "adverse." For instance, Plaintiff does not allege that the new unit was less desirable, subjected her to greater hardship, or placed her at greater risk of harm. Plaintiff simply states that the move placed her under different management. Given Plaintiff's complaints about Defendant Dewitt and the officers and staff on her unit, it is difficult to imagine how such a move could be characterized as "adverse."

Thus, the Court finds that Plaintiff's allegations are insufficient to show that Defendant Dewitt's act of moving Plaintiff to a different unit constituted an "adverse action" that would deter a person of ordinary firmness from engaging in protected activity. As a result, Plaintiff's retaliation claim against Defendant Dewitt should be dismissed.

### c.   Causal Connection

To satisfy the third prong of her remaining retaliation claims against Defendants Cerami and Rogers, Plaintiff must allege a causal connection between the exercise of her constitutional rights and the Defendants' adverse actions. In other words, Plaintiff's allegations must be sufficient to show that her constitutionally protected conduct was a substantial or motivating factor in the alleged withholding of her mail by Defendants.

As noted earlier, the constitutionally protected activity that allegedly prompted Defendants Cerami and Rogers to withhold Plaintiff's mail was Plaintiff's pursuit of criminal and/or civil charges against the officer at SCI-Muncy who allegedly raped her. In particular, Plaintiff alleges that Defendant Cerami was aware that she "was transferred to SCI-Cambridge Springs because I was raped by an officer at SCI-Muncy" and, as a result, "was very nasty and threatened me to take a polygraph test for Camp Hill investigators, she withheld my mail, and she said that I should just drop the charges...." (Complaint at unnumbered p. 3). In addition, Plaintiff claims that Defendant Rogers "stated that I was fighting a losing battle by insisting on pressing charges for the rape that took place in SCI-Muncy," and "[h]e has been withholding my mail." (Id.).

In response, Defendants note that Plaintiff first alleged she was raped at SCI-Muncy on April 25, 2002, and that Plaintiff was transferred to SCI-Cambridge Springs on September 13, 2003. Nonetheless, Plaintiff did not begin complaining about the harassment and retaliation alleged in the instant lawsuit until June 4, 2008. (See Complaint at unnumbered p. 5, ¶ 10). As a result, Defendants argue that the lack of temporal proximity between Plaintiff's alleged protected activity of filing rape charges and the Defendants' alleged adverse actions indicates that there is no causal connection sufficient to satisfy the third prong of Plaintiff's retaliation claim.

However, "[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173, 178 (3d Cir. 1997). "[W]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." Kachmar, 109 F.3d at 177, citing Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993). See also Alexander v. Forr, 2006 WL 2796412 at * 21 (M.D.Pa. Sept. 27, 2006)(causal connection can be established by "chronology of events from which the defendant's retaliatory animus can reasonably be inferred").

Here, Plaintiff has alleged that Defendant Cerami "has been harassing [her] since [she] arrived here at SCI-Cambridge Springs," and that Defendants Cerami and Rogers "are in close contact with Muncy staff, making it hard for [Plaintiff] to get mail out of the prison ...." (Complaint at unnumbered p. 3). Plaintiff also makes reference to a "consistent pattern of mail tampering at [SCI] Cambridge" and states that all of her problems began "with my mail not leaving the prison, to the courts and to any attorney [she] tried to contact" after investigators interviewed her at SCI-Cambridge Springs regarding her rape allegations. (See Attachment to Complaint at unnumbered p. 9). Accepting the foregoing facts alleged in the Complaint as true and construing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has

11

alleged enough to create a plausible causal connection between her protected activity and Defendants' adverse actions to satisfy the third prong of Plaintiff's retaliation claim.

Based on the foregoing analysis, therefore, Plaintiff has sufficiently stated prima facie cases of retaliation against Defendants Cerami and Rogers, for allegedly withholding her mail. As a result, Defendants' motion to dismiss Plaintiff's retaliation claims against Defendants Cerami and Rogers, for allegedly withholding Plaintiff's mail, should be denied and such claims should be allowed to proceed at this time.

### 3. Due Process Claim v. Defendants Brooks and Beard

Plaintiff alleges that Defendants Brooks and Beard refused to have her transferred to an out-of-state institution. (Complaint at unnumbered p. 4). Construing this claim in the light most favorable to Plaintiff, she is essentially alleging a violation of her Fourteenth Amendment due process rights. To trigger the safeguards of the Due Process Clause, however, Plaintiff must show that a protected liberty interest is at issue. See Meachum v. Fano, 427 U.S. 215, 223-224 (1976). This Plaintiff cannot do, as it is well-settled that an inmate has no constitutionally protected liberty interest in his place of confinement, transfer, or classification. Sandin v. Conner, 515 U.S. 472, 483 (1995); Meachum v. Fano, 427 U.S. 215, 224 (1976); Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). As a result, Plaintiff's due process claim against Defendants Brooks and Beard should be dismissed.

### 4. Personal Involvement of Defendants Winstead, Brooks, and Beard

Defendants Winstead, Brooks, and Beard argue that Plaintiff's claims against them should be dismissed because she has failed to allege their personal involvement in any of the harassment and retaliation Plaintiff claims to have suffered. In particular, Defendants argue that "Plaintiff has not established that these individuals had contemporaneous knowledge of the complained-of conduct, much less that they somehow gave their acquiescence thereto."

(Document # 41, Defendants' Brief, at p. 12).  The Court disagrees.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct.  Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).   Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct."  Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991).  The supervisor must be personally involved in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988).  If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.  Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).  However, a supervisory official can be found liable under § 1983 if it is shown that he had knowledge of and acquiesced in his subordinates' violations.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997).

Here, Plaintiff makes the following allegations against Defendants Winstead Brooks, and Beard:

> I wrote to Ms. Winstead for help.  She also knew about the rape at SCI-Muncy.  I told her about Capt. Rogers and Lt. Cerami and the investigators at Camp Hill.  She did nothing.  I told her about trying to get mail to the press and my family and she did nothing.  She is standing by her staff's retaliation against me.  I told her that she was doing the same thing Warden Dragovich at Muncy did to me.  She walked away.  I wrote her requests, most of which she rarely responded to....
>
>     *                *                *
>
> Marilyn Brooks disregarded all information I informed her of concerning the harassment and retaliation by correctional officers and staff members.  She also disregarded the fact the mailroom was withholding my mail and my legal mail privileges were being violated....
>
>     *                *                *
>
> The Honorable Judge Nancy Butts contacted Mr. Beard concerning the out of state transfer due to the rape and then the retaliation and

13

> harassment by correctional officers and staff members. Mr. Beard did nothing to rectify the situation. He was also made aware of the situation with the mailroom and the abuse of my legal mail privileges. Mr. Beard did nothing to stop the harassment and retaliation...

(Complaint at unnumbered pp. 3-4).

As can be seen from the foregoing, Plaintiff has not alleged that Defendants Winstead, Brooks, or Beard were, in any way, personally involved in the harassment or retaliation of which she complains. However, Plaintiff does allege that she made each of these Defendants aware of the harassment and retaliation she allegedly suffered at the hands of correctional officers and staff, yet none of said Defendants offered assistance or took any corrective action. Construed in the light most favorable to Plaintiff, these allegations are sufficient to show that these Defendants had knowledge of and essentially acquiesced in their subordinates' complained-of misconduct. Robinson, 120 F.3d at 1293-1295. Accordingly, Defendants' motion to dismiss Plaintiff's claims against Defendants Winstead, Brooks, and Beard, based upon their alleged lack of personal involvement, should be denied.

### 5. Defendant Senz

In her Supplemental Complaint [Document # 84], Plaintiff claims that Defendant Senz is responsible for causing the retaliation she allegedly suffered, because she reported Plaintiff's rape allegations to the DOC Office of Professional Responsibility ("O.P.R."), which then sent investigators to SCI-Cambridge Springs to interview Plaintiff. Plaintiff asserts that "as a result of [Defendant Senz] reporting what [Plaintiff] told her about [ the alleged rape at SCI-Muncy], this plaintiff began to begin [sic] being retaliated against." (Document # 84, Supplemental Complaint, at ¶ 3). Thus, Plaintiff is not alleging that Defendant Senz retaliated against her, but that her reporting of Plaintiff's rape allegations to the O.P.R. set in motion a chain of events that allegedly resulted in other staff members retaliating against Plaintiff.

Construing the foregoing allegations in the light most favorable to Plaintiff, this Court is unable to decipher any constitutional basis for Plaintiff's claim against Defendant Senz. At

most, it appears Plaintiff is objecting to the fact that Defendant Senz disclosed to the O.P.R. information that Plaintiff revealed to her in confidence, and that this alleged breach of confidence ultimately caused others to retaliate against her. Such a claim is tenuous, at best, and fails to state a plausible claim for relief under Iqbal and its progeny. As a result, Plaintiff's claim against Defendant Senz should be dismissed, and she should be terminated from this case.

### 6. Mental Anguish and Defamation Claims

The only remaining claims yet to be addressed are Plaintiff's generalized state and/or common law tort claims of "mental anguish" and defamation.[4] Defendants assert that, to the extent Plaintiff is suing them for monetary damages, they are immune from suit. This Court agrees.

It is well settled that suits for damages by individuals against state governments, state agencies, or state officers acting in their official capacities are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985)(holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); Chittister v. Dep't of Community and Economic Development, 226 F.3d 223 (3d Cir. 2000)(holding that individuals are barred from seeking monetary damages from state governments or state agencies). See also Bey v. Pennsylvania Department of Corrections, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000) wherein the court summarized well-established law, observing that:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by

---

[4] Since this Court has already recommended that Defendant Senz be terminated from this case, these claims will be considered only as to Defendants Winstead, Brooks, Beard, Cerami, Rogers, and Dewitt. Nonetheless, the same analysis would be applicable to Defendant Senz, as she is also a DOC employee.

> Congress, states are immune from suit in federal court. See Seminole
> Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

Id.; see also Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued. Wilson v. Vaughn, No. 93-C.V.-6020, 1996 WL 426538, *1 n.2 (E.D.Pa. July 30, 1996)(citing, 42 Pa. Con. Stat. Ann. §8521(b)). Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. Smith v. Luciani, No. 97-3613, 1998 WL 151803, *4 (E.D.Pa. March 31, 1998), aff'd, 178 F.3d 1280 (3d Cir. 1999)(Table). Thus, Plaintiff's mental anguish and defamation claims against Defendants in their official capacities should be dismissed, to the extent they seek monetary damages.

Similarly, to the extent Defendants are being sued for monetary damages in their individual capacities, they are immune from Plaintiff's state and/or common law tort claims based on the doctrine of sovereign immunity. See 42 Pa.C.S. §§ 8521-8522; 1 Pa.C.S. § 2310. None of the exceptions to sovereign immunity set forth in 42 Pa.C.S. § 8522(b) apply in this case.[5] Thus, Plaintiff's mental anguish and defamation claims against Defendants in their individual capacities should be dismissed, to the extent they seek monetary damages.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss [Document 40] and supplemental motion to dismiss [Document # 86] be granted in part, as follows:

---

[5] Section 8522(b) provides the following list of exceptions to the sovereign immunity covering Pennsylvania state actors, none of which apply here: (1) vehicle liability; (2) medical/professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, and control of animals; (7) liquor store sales; (8) national guard services; and (9) toxoids and vaccines.

1. Plaintiff's Eighth Amendment claims against Defendants Cerami and Dewitt, based upon verbal threats and harassment, should be dismissed;

2. Plaintiff's retaliation claims against Defendant Dewitt should be dismissed;

3. Plaintiff's due process claims against Defendants Brooks and Beard for refusing to transfer her to an out-of-state facility should be dismissed;

4. Plaintiff's claim against Senz should be dismissed because it fails to set forth a plausible claim for relief under Iqbal, and Defendant Senz should be terminated from this case; and

5. Plaintiff's mental anguish and defamation claims should be dismissed to the extent Plaintiff seeks monetary damages, based upon Defendants' Eleventh Amendment and/or sovereign immunity.

It is further recommended that Defendants' motion to dismiss [Document # 40] be denied in part, as follows:

1. Plaintiff's retaliation claims against Defendants Cerami and Rogers should be allowed to proceed;

2. Defendants' motion to dismiss Plaintiff's claims against Defendants Winstead, Brooks, and Beard, based upon their alleged lack of personal involvement, should be denied; and

3. Plaintiff's mental anguish and defamation claims against Defendants Winstead, Brooks, Beard, Cerami, Rogers, and Dewitt should be allowed to proceed, only to the extent Plaintiff seek injunctive relief.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 19, 2010

cc: The Honorable Sean J. McLaughlin
United States District Judge