IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLE HAWKINS, | ) | |
| Plaintiff, | ) | C.A. No. 09-98 Erie |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| MARILYN BROOKS, et al., | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 149] be granted. In addition, this Court recommends that Defendants' partial motion to dismiss amended complaint [ECF No. 141] be dismissed as moot.

### II.  REPORT

#### A.  Relevant Procedural History

On May 1, 2009, Plaintiff Nichole Hawkins, an inmate incarcerated at the State Correctional Institution at Cambridge Springs, Pennsylvania ("SCI-Cambridge Springs"), initiated this civil rights action pursuant to 42 U.S.C. § 1983 by filing a *pro se* complaint. [ECF No. 3]. Named as Defendants in the complaint are: Marilyn Brooks, former Superintendent at SCI-Cambridge Springs ("Brooks"); Rhoda Winstead, Superintendent at SCI-Cambridge Springs ("Winstead"); Capt. Rogers, a corrections officer at SCI-Cambridge Springs ("Rogers"); Lt. Cerami, a corrections officer at SCI-Cambridge Springs ("Cerami"); Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections ("Beard"); and Carol Dewitt, Unit Manager at SCI-Cambridge Springs ("Dewitt"). On January 12, 2010, this Court granted Plaintiff leave to supplement her complaint to add Ms. Senz, a counselor at SCI-Cambridge Springs ("Senz"), as a

Defendant in this case. [ECF No. 84].

In her complaint, Plaintiff asserted claims of retaliation, harassment, defamation of character, and mental anguish against some or all of the named Defendants. In particular, Plaintiff alleged that Defendant Cerami subjected her to verbal threats and harassment, and withheld her mail, in retaliation for Plaintiff's claim that she was raped by a corrections officer at SCI-Muncy. (ECF No. 3, Complaint, at p. 3). Plaintiff claimed that Defendant Rogers also withheld her mail, allegedly in retaliation for her complaints about Defendant Cerami. (Id.). Plaintiff alleged that Defendants Winstead, Brooks and Beard were each told about the alleged harassment and retaliation by Defendants Cerami and Rogers, but did nothing to rectify the situation. (Id. at pp. 3-4). Plaintiff claimed further that Defendant Dewitt ignored the officers' alleged harassment and retaliation, and also committed her own acts of harassment and retaliation. (Id.). In her supplemental complaint, Plaintiff claimed that Defendant Senz was responsible for the alleged acts of retaliation because she made officers aware of Plaintiff's rape allegations. (ECF No. 84, Supplemental Complaint, at p. 1). Finally, with regard to Defendants Brooks and Beard, Plaintiff claimed that they failed to have her transferred out of state, in violation of her due process rights. (Id. at p. 4). As relief for her claims, Plaintiff seeks monetary damages and injunctive relief in the form of an order requiring Defendants to cease all harassment and retaliation and to implement an out-of-state transfer to SCI-Jessup in Baltimore, Maryland.

In response to the complaint, the originally named Defendants filed a motion to dismiss [ECF # 40], arguing, *inter alia*, that: (i) Plaintiff failed to state a claim upon which relief may be granted; (ii) Plaintiff failed to adequately allege any personal involvement against Defendants Brooks, Winstead, and Beard; and (iii) Plaintiff's claims of mental anguish and defamation were barred by the Eleventh Amendment and/or sovereign immunity. Defendant Senz subsequently filed a motion to dismiss the supplemental complaint [ECF No. 86], arguing that Plaintiff failed to state a claim against her upon which relief may be granted.

On February 19, 2010, this Court issued a Report and Recommendation ("R&R") recommending that Defendants' motions to dismiss be granted in part and denied in part. [ECF No. 89]. In particular, this Court recommended that all of Plaintiff's claims be dismissed, except for the following: (i) Plaintiff's retaliation claims against Defendants Cerami and Rogers; (ii) Plaintiff's claims against Defendant Winstead, Brooks and Beard regarding their alleged failure to rectify the alleged retaliation; and (iii) Plaintiff's mental anguish and defamation claims, but only to the extent Plaintiff seeks injunctive relief.

On March 9, 2010, District Judge Sean J. McLaughlin issued a Memorandum Order adopting the R&R, and allowing the foregoing claims to proceed. [ECF No. 101].[1] Defendants filed an answer in response to those remaining claims on April 16, 2010. [ECF No. 112]. Plaintiff subsequently obtained counsel, who filed a motion for leave to amend Plaintiff's complaint. [ECF No. 136]. This motion was granted on August 20, 2010, and Plaintiff's amended complaint was filed on that date. [ECF No. 139]. The majority of the amended complaint is simply a refiling of the original *pro se* complaint that was filed by Plaintiff, with an additional page attached by Plaintiff's new counsel clarifying the damages sought. As a result, the amended complaint contains many of the original claims that were previously dismissed by the Court. Thus, as a precaution, Defendants filed a partial motion to dismiss those claims that had been previously dismissed by the Court, in the event Plaintiff's counsel was attempting to resurrect such claims. [ECF No. 141]. However, Plaintiff's counsel subsequently filed a response to Defendants' partial motion to dismiss declaring that the sole purpose of the amended complaint is to clarify the damages sought, and that it is not intended to reinstate any claims that have been previously dismissed in this case. [ECF No. 144]. Based on this response, the Court

---

[1] In addition, Defendant Senz was terminated from this case, as the only claim against her was dismissed.

recommends that Defendants' partial motion to dismiss [ECF No. 141] be dismissed as moot.

The parties have since completed discovery, and Defendants have filed a motion for summary judgment seeking the entry of judgment in their favor on Plaintiff's remaining claims, as a matter of law. [ECF No. 149]. Plaintiff has filed a memorandum of law in opposition to Defendants' motion [ECF No. 154], and Defendants have filed a reply brief [ECF No. 161]. This matter is now ripe for consideration.

**B.  Standard of Review**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56©. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a

scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### C. Discussion
#### 1. Statute of Limitations

Defendants assert that Plaintiff's claims against Defendant Brooks are barred by the applicable statute of limitations and should be dismissed.

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims to determine the applicable limitations period. Sameric Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998)(internal citations omitted). In this regard, federal courts sitting in Pennsylvania have adopted Pennsylvania's two year personal injury statute of limitations set forth at 42 Pa.C.S.A. § 5524, in determining that a § 1983 claim must be filed no later than two years from the date the cause of action accrued. See Lake v. Arnold, 232 F.2d 360, 368 (3d Cir. 2000); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir. 1996). Furthermore, a claim under § 1983 accrues when the plaintiff "knew or should have known of the injury upon which [his] claim is based." Sameric, 142 F.3d at 599.

Plaintiff initiated this action by filing a motion for leave to proceed *in forma pauperis* on May 1, 2009. Accordingly, any claim concerning an injury of which Plaintiff "knew or should have known" prior to May 1, 2007, is barred by the statute of limitations. In this regard, Defendants argue that any claim against Defendant Brooks must have accrued well before May 1, 2007, because she has had no contact with Plaintiff since she left SCI-Cambridge Springs to become Superintendent at SCI-Albion in July 2004. Thus, Defendants contend that Plaintiff's claims against Defendant Brooks are time-barred.

Plaintiff counters that the statute of limitations should be tolled under Pennsylvania's discovery rule because "[i]t was not until after the OPR investigation in late 2007 or early 2008 *and the subsequent increase in the number of mail-tampering incidents* that [Plaintiff] began to associate her various mail complaints with the retaliatory animus held by Department of Corrections officials." (ECF No. 154, Plaintiff's Memorandum of Law, at p. 25)(emphasis added). In making this argument, however, Plaintiff clearly indicates that her retaliation claim is based primarily upon events that occurred after the OPR investigation in late 2007 or early

6

2008, at least three years after Defendant Brooks left her post at SCI-Cambridge Springs. In fact, Plaintiff has acknowledged that her "problems started in earnest not long after the second investigation of her rape allegations in late 2007, *indicating that her discussions regarding the rape ... motivated Defendants to retaliate against [her]*." (Id. at p. 23)(emphasis added). Thus, Plaintiff has failed to establish any grounds upon which the statute of limitations should be deemed tolled as to her claims against Defendant Brooks. Accordingly, summary judgment should be entered in favor of Defendant Brooks on all of Plaintiff's claims against her.

### 2. Personal Involvement of Defendants Winstead and Beard

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006). However, a supervisory official can be found liable under § 1983 if it is shown that he had knowledge of and acquiesced in his subordinates' violations. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997).

Here, Defendants Winstead and Beard argue that Plaintiff's claims against them should be dismissed because she has failed to allege their personal involvement in any of the retaliation Plaintiff claims to have suffered. In particular, Defendants argue that Plaintiff has failed to prove that either of them "was aware of and acquiesced to wrongdoing on the part of [his/her]

7

subordinates." (ECF No. 151, Defendants' Brief, at pp. 11-12).

### a. <u>Defendant Winstead</u>

During her deposition in this case, Plaintiff offered the following testimony regarding her claims against Defendant Winstead:

> My claims against Superintendent Winstead are that I wrote to her and I spoke to her face to face on several occasions in regards to mail tampering, retaliation and my mail not leaving the institution....
>
> And the investigations that were conducted I felt were not sufficient investigations; number one, because I would have felt more comfortable had I had my own representation and people outside of the institution, not just Camp Hill investigating the situations. Like when I told her that my mail wasn't leaving the institution to go to the courthouse or to go to the press or anything where even certain letters I was sending out to my family, she got back to me and told me that she investigated and she was unable to prove, you know, to find anything that proves that certain things were taking place with my mail.
>
>         \*                              \*                              \*
>
> And I just felt that it was and [sic] unjust to me because she still was telling me that she didn't have enough proof for the things that were going on. I know as her being a superintendent she can't always be aware of every situation that happens, however, I feel like the things that were brought to her attention were not handled sufficiently the way they should have been and enough action wasn't taken against the staff members that I had brought the claim against.

(ECF No. 150-6, Plaintiff's deposition transcript, at pp. 19-21 (internal pp. 18-20)).

Thus, Plaintiff's retaliation claim against Defendant Winstead essentially boils down to her belief that Defendant Winstead's investigation of Plaintiff's complaints of staff retaliation and mail tampering was "not handled sufficiently" and was not thorough enough; however, this belief is unsubstantiated by any other evidence of record. As a result, Plaintiff's unsubstantiated belief is nothing more than a conclusory allegation that fails to create a genuine issue of material fact as to whether Defendant Winstead knowingly acquiesced in her subordinates' alleged retaliatory acts toward Plaintiff. Accordingly, summary judgment should be entered in favor of

8

Defendant Winstead on Plaintiff's retaliation claim.

### b. Defendant Beard

With regard to her claim against Defendant Beard, Plaintiff offered the following deposition testimony:

> I wrote directly to him and told him what was happening with the retaliation of [Defendants] Cerami, DeWitt, Captain Rogers.... I wrote to him and told him about my mail not leaving the institution.
>
> \* \* \*
>
> ... I spoke to him about everything that was occurring with the retaliation and everything else and he did nothing.

(ECF No. 150-7, Plaintiff's deposition transcript (cont'd), at pp. 13-14 (internal pp. 42-43)).

Thus, Plaintiff's claim is simply that Defendant Beard failed to respond to her written complaints about staff retaliation and mail tampering. However, in response to Plaintiff's Interrogatories directed to him in this case, Defendant Beard stated under oath that he "had no record of being contacted by the plaintiff concerning allegations of retaliation and mail tampering by staff at SCI-Cambridge Springs." (ECF No. 150-4 at p. 12, ¶ 1). Yet, even if he had been so contacted, his alleged lack of response is not sufficient to establish his personal involvement in the alleged retaliation by SCI-Cambridge Springs staff members. See, e.g., Bobko v. Lavan, 157 Fed. Appx. 516, 518 (3d Cir. 2005)(defendants cannot be held liable under § 1983 for merely failing to respond to plaintiff's grievances); Washington-El v. Beard, 2009 WL 2982663, at *2 (W.D.Pa. Sept. 14, 2009)(failure to "respond" or "correct" the alleged violations by others did not state a claim against Defendant Beard); Ransome v Mooney, 2010 WL 2490751, at *7 (M.D.Pa. Aug. 9, 2010)("a mere 'allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations'"), quoting Greenwaldt v.

9

Coughlin, 1995 U.S. Dist. LEXIS 5144, at *11 (S.D.N.Y. Apr. 19, 1995). Accordingly, summary judgment should be entered in favor of Defendant Beard on Plaintiff's retaliation claim.

### 3. Retaliation Claim v. Defendants Cerami and Rogers

Plaintiff claims that Defendants Cerami and Rogers withheld her mail in retaliation for her pursuit of charges against the corrections officer at SCI-Muncy who she claims raped and impregnated her.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;
2) he suffered "adverse action" at the hands of prison officials[2]; and
3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[3]

---

[2]

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[3]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). Here, Plaintiff claims that Defendants Cerami and Rogers retaliated against her by withholding her mail. In response, Defendants contend that Plaintiff "has presented no evidence that the defendants were tampering with her mail.... Rather, her claim is based on mere conjecture and speculation, which is insufficient to survive summary judgment." (ECF No. 151, Defendants' Brief, at pp. 8-9). The Court agrees.

---

In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

Despite the long list of mail irregularities Plaintiff alleges to have occurred during her incarceration at SCI-Cambridge Springs, only two of the incidents are alleged to have involved Defendants Rogers and Cerami.[4] The first of these incidents allegedly occurred in February 2008, when Plaintiff "received several pieces of separately posted outgoing mail, containing both legal and non-legal mail sent at different times, returned to her grouped together in one single envelope." (ECF No. 154, Plaintiff's Memorandum of Law, at p. 12 (internal p. 6)). Plaintiff alleges that a corrections officer subsequently told Plaintiff that "she was instructed by [Defendant] Cerami to give the mail back to [Plaintiff]." (ECF No. 150-7, Plaintiff's deposition transcript (cont'd), at p. 9 (internal p. 38)). Based solely upon this statement, Plaintiff essentially presumes that the outgoing mail that was returned to her in the envelope had been improperly withheld by Defendant Cerami. Yet, when Plaintiff grieved the return of her mail, the grievance officer informed Plaintiff that she "simply had no money on [her] account" to pay for postage, and that "[i]f funds are not available, the envelopes are opened, searched and returned to the inmate, per policy." (ECF No. 150-5 at p. 5). Thus, there is no evidence of record to support Plaintiff's conclusory assertion that Defendant Cerami withheld her outgoing mail.

The second incident allegedly occurred around the same time, when Plaintiff was told by a member of the mailroom staff that one of her outgoing letters was rejected for insufficient postage and was then "forwarded to Defendant Rogers for security purposes or whatever." (ECF No. 150-6, Plaintiff's deposition transcript, at p. 28 (internal p. 27)). However, Plaintiff contends that "if the mail would have been sent out when it was supposed to be sent out the

---

[4] In her memorandum in opposition to Defendants' motion, Plaintiff attempts to link Defendant Rogers and Cerami to all of the alleged incidents of mail tampering by broadly claiming that they are "[a]mong the few people who would be capable of tampering with [Plaintiff's] mail...." (ECF No. 154, Plaintiff's Memorandum of Law, at p. 15 (internal p. 9)). However, Plaintiff has presented no evidence to support this assertion and, thus, it amounts to no more than conjecture.

sufficient funds would have been in [her] account in order for it to be, you know, paid postage...." (ECF No. 150-7, Plaintiff's deposition transcript (cont'd), at p. 1 (internal p. 30)). Even assuming Plaintiff's contention is correct, however, this does not in any way implicate Defendant Rogers, as he did not obtain the piece of outgoing mail in question until after it had been rejected for insufficient postage. Thus, Plaintiff has not presented any evidence to substantiate her bald assertion that Defendant Rogers improperly withheld her mail.

Based on the foregoing, it is apparent that Plaintiff has not presented any evidence from which a reasonable fact finder could infer that she suffered an adverse action at the hands of either Defendant Rogers or Defendant Cerami. Accordingly, summary judgment should be entered in favor of said Defendants on Plaintiff's retaliation claim.[5]

### 4. State Law Claims

The only remaining claims yet to be addressed are Plaintiff's generalized state and/or common law tort claims of "mental anguish" and defamation. In her memorandum of law in opposition to Defendants' summary judgment motion, Plaintiff has recharacterized her mental anguish claim as a claim for intentional infliction of emotional distress, and has declined to pursue her defamation claim. (ECF No. 154, Plaintiff's Memorandum of Law, at pp. 33 and 35 (internal pp. 27 and 29)). Regardless, since this Court has already determined that Plaintiff has failed to state a cognizable federal claim, there is no independent basis on which this Court may exercise jurisdiction over Plaintiff's remaining state law claim of intentional infliction of

---

[5] Because this Court recommends summary judgment based upon Plaintiff's failure to satisfy the second prong of her retaliation claim, there is no need to consider Defendants' argument that Plaintiff has failed to present competent evidence of retaliatory animus.

emotional distress.  As a result, such claim should be dismissed.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [ECF No. 149] be granted.  In addition, this Court recommends that Defendants' partial motion to dismiss amended complaint [ECF No. 141] be dismissed as moot.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of some appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  May 5, 2011

cc:    The Honorable Sean J. McLaughlin
       United States District Judge